**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RONNIE L. WIEGAND,**

        **Plaintiff,**

**-vs-**                                        **Case No. 6:04-cv-1063-Orl-22DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.**      **Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on June 22, 2001. R. 57-61, 256-58. He alleged an onset of disability on June 24, 2001, due to headaches, dizziness, neck pain, degenerative disc disease, and anxiety related disorder. R. 42, 49, 59, 65, 81. The application was

denied initially and upon reconsideration. R. 40-48, 259-67. Plaintiff requested a hearing, which was held on January 15, 2003, before Administrative Law Judge Albert Tutera (hereinafter referred to as "ALJ"). R. 22. In a decision dated February 4, 2003, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 29. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 12. The Appeals Council denied Plaintiff's request on May 10, 2004. R. 7-11. Plaintiff filed this action for judicial review on July 14, 2004. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of degenerative disc disease and anxiety related disorder. R. 40, 42. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease of the cervical spine, status post cervical laminectomy, headaches and a history of asthma, which were "severe" medically determinable impairments, but did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 25. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, as he could lift ten to twenty pounds occasionally, and sit six hours in an eight-hour workday and walk/stand for 2 hours in an 8-hour workday. R. 26. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision.[1] R. 25. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 26. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids),

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits and the medical findings. R. 25.

20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 27. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 27.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments. Second, he claims the ALJ erred by improperly applying the pain standard. Third, he argues that the ALJ erred in evaluating his credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### A. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his pain due to degenerative disc disease. He also argues that the ALJ erred by finding his subjective complaints credible only to the extent he is limited to light work. He contends that the medical evidence of his many doctors' visits, use of pain medications, diagnostic tests, and surgery demonstrate his credibility and that the ALJ failed to make accurate and specific reasons for discrediting his complaints. The Commissioner responds that Plaintiff failed to provide evidence to support his subjective complaints of disabling pain and other symptoms.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 25. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, in conjunction with discussing Plaintiff's RFC, the ALJ stated,

> While it is reasonable to conclude that the claimant should have some pain and/or limitations as a result of his neck injury, the evidence as a whole does not substantiate such severe functional limitations that would preclude him from all work-related activity as is required under Social Security rules and regulations. The record fails to show that the claimant has required significant forms of treatment such as period [sic] of hospitalizations. The record does not show such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability. The medical evidence reveals that the claimant has a history of degenerative disc disease of the cervical spine. On May 25, 2000, the claimant underwent cervical laminectomy from C3-C7 levels. A magnetic resonance imaging of the cervical spine performed on September 14, 2001, revealed evidence of laminectomy. However, there was no herniated disc noted and there was indication of spondylosis. On November 8, 2002, the claimant complained of only a small amount of pain. The claimant walked with a normal gait. He was released to full activity and no restrictions on work activity were imposed on him. In July 2001, the claimant denied any upper extremity weakness or paresthesias. On physical examination, range of motion of the neck was only slightly decreased. There was normal upper extremity reflexes with no focal weakness. Magnetic resonance imaging of the cervical spine revealed only mild degenerative disc disease. A magnetic resonance imaging of the brain was also essentially within normal limits. Another magnetic resonance imaging of the cervical spine conducted on December 20, 2002, revealed degenerative disc disease at multiple levels with small disc protrusion at C7-T1 with mild impingement of the thecal sac. Overall, I find the claimant's testimony and subjective statements regarding his pain and limitations credible to the extent of establishing that he has a combination of severe impairments, but not fully credible to the extent of establishing that these impairments are so severe as to preclude him from performing substantial gainful activity as required under Social Security rules and regulations. Accordingly, I find the claimant's stated symptoms somewhat exaggerated over that [sic] would be expected based on the medical findings in the record (SSR 96-7p).

R. 25-26.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons

must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included the *lack* of a period of hospitalizations, the lack of a marked diminished range of motion or muscle atrophy. The ALJ stated that following Plaintiff's neck surgery, there was no herniated disc noted, and at subsequent examinations in July 2001 and November 2002, Plaintiff complained of only a small amount of pain, walked with a normal gait, and was released to full activity. He denied any upper extremity weakness, no restrictions on work activity were imposed on him, and range of motion of the neck was only slightly decreased. The ALJ also pointed to MRIs of the spine which reveal only mild degenerative disc disease at multiple levels with mild impingement of the thecal sac. R. 255 (December 20, 2002) The ALJ relied on inconsistencies between Plaintiff's reports and his statements and his activities of daily living (driving, shopping, caring for daughter - R. 283) as compared to the objective examination findings. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929.

Moreover, the ALJ's reasons are supported by substantial evidence. As the Commissioner points out, a series of MRIs of the cervical spine indicated only mild disk degeneration. R. 158 (July 24, 2001: mild disk degeneration at C3-4 and C6-7; no evidence of compressions); R. 254 (December 20, 2002: mild degenerative changes at multiple levels do not result in central spinal stenosis). Plaintiff's treating physician, Dr. McMorrow referred Plaintiff to a neurologist, Dr. Cunha, who believed Plaintiff's pain was primarily related to the neck/shoulder muscles. R. 231 (November 19, 2001). Plaintiff admitted that he had experienced headaches for some time in the past, including

migraines and sinus headaches, but they became more pronounced at the beginning of 2001. R. 231. He started taking pain medications after a fall from a six-foot ladder in March 2001. R. 230. He was "somewhat vague about frequency and severity" of his headaches when Dr. Cunha examined him. R. 230.

Although Plaintiff testified at the January 15, 2003 hearing that the pain medications he had been taking did not alleviate the pain in his neck (R. 280), he told Dr. Zwolinski[2] on February 14, 2003 that "his pain level was doing well with Lortab" and decreased his pain level to a 4/10 on a 1-10 scale. R. 271. Plaintiff has a history of not taking medications as prescribed and not following up with physicians when he's been advised to do so. R. 112 (March 14, 2000: Plaintiff given a "sermon" on taking his blood pressure medicines to avoid a stroke or heart attack after admitting that he had stopped taking medication "so long ago" that he could not remember the last time he took a dose); R. 177 (December 11, 2001: "He has multiple medications, but he does not want to take anything so strong because it makes him very drowsy."); R. 187 (May 31, 2000: "Patient said he had not been taking the Darvocet as directed because he was afraid he would get hooked on it. I have explained to him that he is only six days out from a surgical procedure and that is too an unreasonable thing to be taking the medication versus coming [to the Emergency Room] to get injections."); R. 230 (November 19, 2001: although "neurologist ordered a 'seizure medication' for his pain, patient never took this medication as he was uncomfortable with the fact that he'd be taking a seizure medication"); R. 199 (June 21, 2001: "The patient states he did not follow through with the doctor in Orlando regarding his neck like he was supposed to, but he will be doing this over the next month as he does

---

[2] Plaintiff first saw Dr. Zwolinski on January 16, 2003, one day after his hearing in front of the ALJ and approximately 18 months after his alleged onset date of June 24, 2001. R. 272.

have chronic neck pain."); R. 177 (December 11, 2001: "[H]is neck has been stiff since the procedure, although he has not followed up with his neurosurgeon"). Substantial evidence supported the ALJ's decision not to fully credit Plaintiff's complaints of pain.

### B. Application of the grids

Plaintiff claims that because he suffered from neck and shoulder pain, he had nonexertional limitations, precluding the application of the grids and requiring VE testimony.

Once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given

residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

In this case, the ALJ considered Plaintiff's physical impairments, including neck and shoulder pain, and properly assigned an RFC for light work. The ALJ further specifically found that Plaintiff's capacity for light work was substantially intact and had not been compromised by any nonexertional limitations. (R. 27; 28, Findings 12 & 14). Because Plaintiff could perform unlimited types of work at the light and sedentary level, it was unnecessary to call a VE to establish whether he could perform work existing in the national economy. *See Foote*, 67 F.3d at 1559. Accordingly, the ALJ was justified in his reliance upon the grids. *See id.*

### *III. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 29, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record